# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JORDAN MENTER, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS-ACTION COMPLAINT** |
| v. | |
| VESYNC CORP., | DEMAND FOR JURY TRIAL |
| Defendant. | |

Plaintiff Jordan Menter ("Plaintiff" or "Ms. Menter") brings this action on behalf of herself and all others similarly situated against Defendant Vesync Corporation ("Defendant" or "Vesync"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## I.  INTRODUCTION:

1.      This is an action arising from false and misleading representations that Defendant made about (1) its Levoit-branded EverestAir Smart True HEPA air purifier; (2) its Levoit-branded "Core 300" line of air purifiers—the Levoit Core 300, Core 300-RAC, Core 300S, and Core P350 True HEPA air purifiers; and (3) the respective replacement filters for each one of these models.

2.      In short, High Efficiency Particulate Air filters ("HEPA filters") are considered the "gold standard" in air-purification technology, and if a given air purifier can meet the HEPA standard, then its manufacturer can sell that purifier at a premium to non-HEPA purifiers (40% is the typical markup). Here, Defendant represented (1) that the purifiers at issue were equipped

1

with HEPA filters when in fact they were not; and (2) that the replacement filters it sold for these purifiers were "True HEPA" filters, when in fact they were not. Consequently, Defendant was able to charge more for its products than it otherwise could have, and Plaintiff and the proposed classes now seek a return of those overcharges.

3.     More specifically, the air-purifier market has surged in recent years, due in part to the ongoing COVID-19 pandemic and the "once-in-a-lifetime" wildfires that now regularly afflict the United States. Consumers are concerned about keeping their indoor spaces free of pathogens and contaminants, and—as a result—many have begun purchasing home air purifiers, whose yearly sales almost doubled between 2019 and 2022, and now represent a $14 billion/year industry. Defendant is the "#1 Best Selling Air Purifier Brand in the US," and the Amazon sales alone of its Core 300 and 300S Air Purifiers earn the company tens of millions of dollars a month.

4.     But the magnitude of Defendant's sales is due in part to its HEPA claims. HEPA-certified purifiers successfully employ a technology that allows the devices to filter out at least 99.97% of all airborne contaminants from the air. As noted above, HEPA is considered the gold standard in air purification, and if a purifier meets that standard, then its manufacturer will both prominently display that claim and sell that purifier at a premium to non-HEPA filters.

5.     Here, as noted above, Defendant claimed that its purifiers—specifically, the EverestAir Smart True HEPA purifier and the Core 300 line of air purifiers—met the HEPA standard: a claim that was embedded in the actual names of the purifiers at issue here, and which appeared on their packaging, on Defendant's website, and on the websites selling these purifiers, such as Amazon. However, independent testing commissioned by Dyson, Inc.—as part of a challenge brought through the National Advertising Division of the Better Business Bureau—

shows that the filters inside Defendant's air purifiers, as well as Defendant's replacement filters, fail to meet the HEPA standards. Moreover, in response to Dyson's challenge, and instead of disputing it, Vesync agreed to cease making HEPA claims about the purifiers at issue here, i.e., Defendant has already implicitly conceded that these purifiers do not in fact meet the HEPA standard.

6.    Defendant's claims, however, had already allowed it to overcharge the proposed classes. But for Defendant's HEPA claims, the fair value of its purifiers would have been substantially lower, i.e., their market price would have been closer to non-HEPA filters, which sell at a discount to HEPA-rated purifiers. Put differently, Defendant's HEPA misrepresentations allowed it to overcharge the classes in the amount of the HEPA-related price premium—even assuming there would be a market for Defendant's non-HEPA filters at all.

7.    Plaintiff is now seeking a return of the HEPA-related premiums that Defendant charged for its purifiers, on behalf of herself and other similarly situated purchasers. Plaintiff alleges that Defendant's conduct violated the Massachusetts Consumer Protection Act (Mass. Gen. Laws Ann. Ch. 93A), and that it constituted a breach of an express warranty, fraud, negligent misrepresentation, and unjust enrichment.

## II. PARTIES:

8.    Plaintiff Menter is a citizen of Massachusetts and resides in the city of Amherst.

9.    Plaintiff is immunocompromised. She is conscientious of the risks that a COVID-19 infection could pose to her health, which include severe illness, or worse. Prior to purchasing an air purifier, Plaintiff needed service work done on her stove, but the repair person informed her that he was unwilling to wear a mask while he worked. As a result, Plaintiff decided to purchase an air purifier, to protect her from exposure for this service work, as well as to protect

her from similar risks going forward. She *only* considered purchasing HEPA-grade filters because only they could sufficiently minimize her health risks.

10.     Accordingly, on October 3, 2023, while at her home in Amherst, Plaintiff Menter purchased the Levoit Core 300 True HEPA Filter Air Purifier from Defendant's "Levoit: Air Purifiers" webpage on Target.com, for $99.99 ($106.24 with tax). Shortly before making her purchase, Plaintiff noted that the Levoit Core 300 was advertised as being HEPA-grade on Target's website; that "HEPA" was incorporated into the product's title; and that the product was described as HEPA-grade in the "About This Item" or "12 Questions" section of Target's website. Shortly after the purchase, Plaintiff received an order confirmation describing the Levoit Core 300 as HEPA-grade:



On October 7, 2023, when Plaintiff received the purifier, it came in a box describing the Core 300 as HEPA-grade.

11.    Prior to purchasing the product, Plaintiff reviewed and relied on Defendant's warranties and representations about the Core 300's HEPA filter and filtration capabilities. Had Defendant not warranted and represented that the Levoit Air Purifiers were HEPA-grade, Plaintiff would not have purchased the purifier and, instead, would have purchased an air purifier that was actually HEPA-grade. In fact, after learning that Defendant's purifier was not HEPA-grade, Plaintiff purchased a replacement purifier.

12.    Defendant Vesync Corporation is a California corporation with headquarters in Anaheim, California.

### III. JURISDICTION:

13.    This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, which confers federal jurisdiction over class actions where, as here: (1) there are 100 or more members in a proposed class; (2) at least one member of that proposed class has a different citizenship than the defendant; and (3) the claims of the proposed class exceed $5,000,000, in the aggregate. *See* 28 U.S.C. § 1332(d)(2), (6).

14.    This Court has personal jurisdiction over Defendant. Among other things, Defendant purposefully directed its activities toward Massachusetts; it purposefully availed itself of the privileges of conducting these activities in Massachusetts, by knowingly selling products in Massachusetts, to Massachusetts residents; Defendant transacts business in Massachusetts; and Defendant's statements or omissions—whether made in Massachusetts or outside of Massachusetts—caused tortious harm in Massachusetts. Moreover, Plaintiff's claims—that she was overcharged for Defendant's air filters—directly arise out of the above contacts.

15.     Venue is proper in this Court under 28 U.S.C. § 1391(2) and (3) because a substantial part of the events giving rise to Plaintiff's claims took place within this District, and because this Court has personal jurisdiction over Defendant.

## IV.  FACTUAL ALLEGATIONS:

### A.  The air-purifier market has ballooned as consumers become increasingly concerned over airborne pollutants.

16.     Over the past several years, the air-purifier market has ballooned as the threat of airborne pollution—and consumer concern over that pollution—has spiked. In 2021 alone, the Environmental Protection Agency estimates that "about 67 million tons of pollution were emitted into the atmosphere in the United States"; the airborne corona virus, which continues to occur in waves, has killed millions and sickened millions more; and ever-more-frequent wildfires regularly make the air unbreathable for large sections of the country.

17.     This pollution comes at a great cost to human health. Aside from airborne pathogens, like the coronavirus, the World Health Organization estimates that "[h]ousehold air pollution was responsible for an estimated 3.2 million deaths per year in 2020," while exposure to air particulates has been linked to symptoms of depression, cognitive decline, increased feelings of anxiety, asthma, and emphysema. The Environmental Protection Agency similarly notes that repeated exposure to indoor air contaminants can cause adverse health effects, which "include some respiratory diseases, heart disease and cancer" that can be "severely debilitating or fatal."[1]

---

[1] United States Environmental Protection Agency, *The Inside Story: A Guide to Indoor Air Quality*, WWW.EPA.GOV, https://www.epa.gov/indoor-air-quality-iaq/inside-story-guide-indoor-air-quality (last visited Nov. 9, 2023).

18.     As a result, public concern about air pollution is high. One 2019 survey found that 43% of respondents had a "great deal" of concern about air pollution in the United States, and 31% had a "fair amount" of concern about air pollution. Taken together, 74% of respondents expressed concern about air pollution, which is in line with the EPA's concerns—the agency rates indoor air pollution among the top five environmental health risks facing the country.

19.     Consumer concern over airborne contaminants has in turn helped the air-purifier market explode, from $8.05 billion in 2019 to $13.97 billion in 2022. According to market research, "the COVID-19 pandemic has increased the demand for air purifiers, with the growing awareness of COVID-19 associated respiratory ailments and the rising need to curb cross-contamination. Factors such as increasing airborne diseases and growing health consciousness among consumers are driving the market."[2]

**B.  HEPA purifiers represent the gold standard in air filtration, and HEPA claims allow manufacturers to charge a premium for their purifiers.**

20.     Air purifiers come in various forms. Among the most effective purifiers are those with "High Efficiency Particulate Air" filters, or "HEPA" filters. The United States government developed HEPA filters while working on the Manhattan Project, to filter radioactive particles out of the air, and today they're referred to in the industry as the "gold standard" in air-purification technology.[3]

---

[2] Research and Markets, *Air Purifier Market – Growth, Trends, COVID-19 Impact, and Forecasts (2022 – 2027)*, WWW.RESEARCHANDMARKETS.COM, https://www.researchandmarkets.com/reports/4987153/air-purifier-market-growth-trends-covid-19 (last visited Nov. 9, 2023).

[3] Kim Martineau, *Do HEPA Filters Really Catch Coronavirus Particles?*, COLUMBIA NEWS (Nov. 11, 2021), https://news.columbia.edu/news/do-hepa-filters-really-catch-coronavirus-particles.

21.    HEPA filters are strictly designed, and a filter must meet certain specifications before it can be labeled a HEPA filter. A true-HEPA filter is a type of pleated mechanical filter that typically employs sheets of randomly arranged fiberglass or plastic fibers, held in an accordion shape by aluminum separators:



22.    To be called a HEPA filter, a filter must capture at least 99.97% of all dust, pollen, mold, bacteria, etc., whose size is equal to the "most penetrating particle size" ("MPPS"). The MPPS is the size at which a particle is most likely to pass through a filter, i.e., these are the hardest particles to trap. This in turn means that HEPA filters are more likely to capture particles that are larger or smaller than the MPPS, i.e., by definition, HEPA filters capture more than 99.97% of non-MPPS particles. For ease of reference, the MPPS is typically described as 0.3 microns, but that size can vary by test, and it can include a range of particle sizes. For example,

under certain tests—and in order to meet the HEPA standard—a purifier must be able to filter at least 99.97% of particles that are 0.1–0.3 microns in diameter (in other words, even if a filter captures 99.97% of particles at 0.3 microns, but does not reach 99.97% at 0.2 microns, the filter would not qualify as HEPA).

23.    Accordingly, even though the SARS-CoV-2 virus is about 0.125 microns in diameter, the CDC has stated that "air purifiers can help reduce airborne contaminants, including viruses, in a home or confined space."[4] HEPA filters therefore offer near-certain protection against the transmission of airborne pathogens in the home, along with other forms of air pollution, such as smoke, pollen, dust, spores, etc. A HEPA claim is also a signal to consumers that the product they're purchasing has been constructed to exacting standards, and that it provides superlative levels of filtration.

24.    Consequently, consumers are willing to pay a premium for filters that meet the HEPA standard. A review of sales prices across brands that sell both HEPA and non-HEPA filters (what marketers sometimes call "HEPA-type" purifiers) indicates that HEPA purifiers sell—on average—at a 41% premium to non-HEPA filters within the same brand:

TABLE A

| Model | HEPA | | | Non-HEPA | | | HEPA premium |
|---|---|---|---|---|---|---|---|
| | Price | Coverage | Price/sf | Price | Coverage | Price/sf | |
| Molekule | $1,015 | 1,000 sf | $1.02 | $600 | 1,000 sq/ft | $0.60 | 41% |
| Holmes | $40 | 80 sf | $0.50 | $35 | 109 sq/ft | $0.32 | 36% |
| Crane | $90 | 250 sf | $0.36 | $61 | 300 sq/ft | $0.20 | 44% |
| Therapure | $180 | 200 sf | $0.90 | $180 | 343 sq/ft | $0.52 | 42% |
| Average premium: | | | | | | | 41% |

---

[4] U.S. Environmental Protection Agency, *Will an air cleaner or air purifier help protect me and my family from COVID-19 in my home?*, https://www.epa.gov/indoor-air-quality-iaq/will-air-cleaner-or-air-purifier-help-protect-me-and-my-family-covid-19-my#:~:text=Air%20Quality%20(IAQ)-,Will%20an%20air%20cleaner%20or%20air%20purifier%20help%20protect%20me,protect%20people%20from%20COVID%2D19 (last visited Sept. 10, 2024).

25.     The materiality of a HEPA representations is further confirmed by enforcement actions taken by regulators, like the FTC, which has (among other things) entered into consent decrees with air-purifier manufacturers over claims about the efficacy of their HEPA purifiers and filters. *See, e.g.*, *In the Matter of Honeywell,* FTC File No. 962-3154.[5] Even Vesync appreciates the importance of truthfully representing compliance with HEPA standards—like Dyson, it has used the National Advertising Division to accuse its competitors of making false HEPA claims.

26.     Being able to make a HEPA claim therefore allows manufacturers to charge more for their purifiers than they otherwise could have. And because of this, the phrase "True HEPA" is now ubiquitous in air-purifier marketing, including Defendant's (see below). The claim is a signal to consumers that the air purifier they're buying is high quality and worth more than purifiers that don't have a HEPA filter. Though consumers may not know the HEP standard's filtration-efficiency requirements, or the technicalities of the various HEPA-standard testing protocols, they recognize the HEPA acronym and are willing to pay more for air purifiers that have it in their marketing and labeling. If having a HEPA filter wasn't material to consumers, then manufacturers like Defendant wouldn't advertise the feature so heavily, and Defendant wouldn't bring HEPA false-advertising disputes before the National Advertising Division. In fact, given consumer preference for HEPA filters, there are few, if any, non-HEPA filters left on the market, i.e., there is little to no demand for filters that don't bear the HEPA designation.

**C.  Defendant claims that its purifiers meet the HEPA standard.**

---

[5] Available at *https://www.ftc.gov/legal-library/browse/cases-proceedings/962-3154-honeywell-inc-matter*.

27.    At issue in this action are false HEPA claims that Defendant made about the

following products: (1) the Levoit EverestAir Smart True HEPA air purifier; (2) Levoit's "Core

300" line of air purifiers—the Levoit Core 300, Core 300-RAC, Core 300S, and Core P350 True

HEPA air purifiers; and (3) the respective replacement filters for each of these models.

28.    The EverestAir is a slab-shaped device that accepts a rectangular filter. The Core

Series purifiers are cylindrical devices that use the same circular filter, i.e., the filter is

interchangeable between them. These cylindrical devices have some unique features between

them (e.g., the Core 300S can be controlled by an app), but they're substantially similar in

performance, and they retail between $99.99 and $149.99. Moreover, Plaintiff is informed and

believes that Defendant applied test results from one filter to all of the Core 300 Series air

purifiers.



29.    Throughout the class period, Defendant made the following HEPA representations

in the advertising for its EverestAir Air Purifier. These representations were made (among other

places) on its website (which has since been altered), in its advertising, and on the websites of

online stores that sell these filters, such as Amazon (these webpages have also been altered):

a)  Levoit EverestAir® Smart True HEPA Air Purifier.

b) To be considered True HEPA by US standards, the HEPA filter must trap at least 99.97% of 0.3-micron airborne particles. The EverestAir achieves this high standard of excellence, trapping fine dust, pollen, smoke particles, and pet dander, keeping your air as clean as possible.

c) H13 True HEPA Filtration Traps at least 99.97% of 0.3-micron airborne particles.

d) H13 True HEPA Filter with HEPASmartTM Technology Enhanced with statically charged fibers to trap at least 99.97% of 0.3-micron airborne particles, such as fine dust, smoke particles, pollen, and pet dander.

e) H13 True HEPA Filter Captures 99.99% of Particles, Pet Allergies, Smoke, Dust, ANTI-ALLERGENS & ODORS: Premium 3-stage filtration includes a Washable Pre-Filter, H13 True HEPA Filter, and High-Efficiency Activated Carbon Filter. Trap at least 99.97% of 0.3-micron airborne particles, as well as odors, VOCs, fumes, and smoke.

f) The EverestAir provides premium filtration, trapping at least 99.97% of 0.3-micron airborne particles.

g) H13 True HEPA Filter with HEPASmart Technology. Enhanced with statically charged fibers to trap fine dust, smoke particles, pollen, and pet dander, as well as bacteria, mold, and viruses*. *Testing Report No. 220614240GZU-001.

30. As to the Core 300 line of purifiers, Defendant made the following express representations. These representations were made (among other places) on its website (which has since been altered), in its advertising, and on the websites of online stores that sell these filters, such as Amazon (these webpages have also been altered):

a) Levoit Core 300 True HEPA Air Purifier.

b) Breathe in clean air with every breath using the Levoit Smart True HEPA Air Purifier.

c) [Includes a] H13 True HEPA Filter.

d) HEPASmartTM Technology enhances the H13 True HEPA filtration by capturing 99.99% of bacteria and mold, as well as 99.9% of viruses*.

e) Remove 99.97% Dust Smoke Mold Pollen, Core 300.

f) The H13 True HEPA Filter works alongside the Pre-Filter and High-Efficiency Activated Carbon Filter to capture 99.97% of airborne particles 0.3 microns in size, such as dust, smoke, pollen, odor.

g) High Filtration ≥ 99.97%* *Filters at least 99.97% of 0.3-micron airborne particles.

h) Levoit Core 300 True HEPA 3-Stage Original Filter.

i) Fill your environment with fresh, clean air using Levoit's Core 300-RF 3-Stage Original Filter. An effective 3-stage filtration system captures at least 99.97% of airborne particles 0.3 microns in size, so your surrounding air is free of harmful contaminants.

31.     The following image is representative of the type of HEPA representations that consumers would encounter before purchasing Defendant's Core 300 line of purifiers:



32.     Consumers interested in purchasing the EverestAir Purifier would encounter advertising such as this:



33.     Throughout the class period, the packaging of the Core 300 line of purifiers also included HEPA claims:



34.     The packaging for the EverestAir makes a similar claim:



35.    And so does the packaging for Defendant's replacement filters:





**D. Defendant's air purifiers fail to meet the HEPA standards.**

36.     However, Defendant's Levoit Air Purifiers do not, in fact, meet the HEPA standard.

37.     One of Defendant's competitors, Dyson, challenged Vesync's HEPA claims, which are described above, in front of the National Advertising Division of the Better Business Bureau. On August 4, 2023, the National Advertising Division released its "FINAL DECISION," which is attached to this complaint as Exhibit A.

38.     Dyson alleged that the filters and replacement filters for the EverestAir, Core 300, and Core 300S Smart True HEPA Air Purifiers did not actually meet HEPA standards, despite Defendant's express and implied representations to the contrary. (Ex. A at 2.)

39.     In support of these allegations, Dyson presented the Advertising Division with the Institute of Environmental Science and Technology's (the IEST's) Contamination Control Division's "industry-recognized guides establishing the basic standards and definitions for HEPA-level filtration in the U.S.," and "third-party testing conducted by SGS IBR Laboratories on the filters used in the Levoit EverestAir Smart True HEPA and Core 300 and Core 300S True HEPA air purifiers," which demonstrated that Defendant's filters did not in fact meet the IEST's HEPA standards. (*Id.*) Dyson also pointed out that Defendant's filters failed to meet the U.S.

Department of Energy's guidelines re: what constitutes a HEPA filter, as well as the European "standard for [HEPA] performance." (*Id.*)

40.     In response to Dyson's challenge—and instead of attempting to defend its HEPA claims—Vesync "elected to permanently discontinue the challenged claims." Defendant has since stripped its website of any claims that link the HEPA standard to the purifiers at issue here. On July 23, 2023, Vesync removed the old product page for its Core 300 series Air Purifiers and uploaded a new one with a unique web address. The old webpage described the Core 300S as the "Levoit Core 300S Smart True HEPA Air Purifier," but the new webpage omits all references to HEPA filtration. Defendant also attempted to scrub any reference to HEPA filtration from the online storefronts that sold the challenged purifiers and filters.

41.     In addition to the above, Plaintiff's counsel commissioned their own independent third-party testing of the Core 300 series replacement filter, which is attached to this complaint as Exhibit B.

42.     Plaintiff's counsel chose an industry leader in rigorously and accurately testing HEPA filters, which companies frequently use to certify their filters. The lab is certified by ANAB/ANSI, a non-governmental organization that provides accreditation services and training to public and private-sector organizations. The lab is known for its stringent adherence to the various HEPA testing protocols used by the European Union, the International Standards Organization, and the United States. The lab is capable of testing filters with efficiencies up to 99.9999% filtration.

43.     Just as Dyson found, Plaintiff's testing confirmed that Defendant's Core Series filters are not HEPA-grade.

44.     Plaintiff's lab conducted the tests in accordance with both the European and American testing protocols. In Europe, the protocol used to establish whether a filter is HEPA-grade is the EN1822 test. When Plaintiff's lab tested Defendant's filter under the EN1822 standard, the filter not only failed to meet the HEPA standard, it was given the second-lowest grade possible.

45.     And as for the American HEPA test, the IEST-RP-CC001.7 protocol (which Defendant itself uses), a filter must have a filtration efficacy of at least 99.97% for particles between 0.1 and 0.2 microns, *and* between 0.2 and 0.3 microns (i.e., both ranges have to meet the 99.97% threshold). Defendant's filters, however, failed to pass this test, which is presumably why Defendant decided not to challenge Dyson's findings, and to pull its HEPA claims from the market.

46.     Given that Defendant used a substandard filter material for its Core Series products that doesn't meet the HEPA standard; that the EverestAir purifier and its replacement filter were shown by Dyson's testing to not meet the HEPA standard; and that Defendant has already begun removing HEPA claims from its EverestAir advertising; Plaintiff has reason to believe that future testing will show that the EverestAir purifier and replacement filters do not meet the HEPA standard.

47.     Further, Plaintiff is informed and believes that Defendant knew—through its own testing under IEST and EN1822 standards, which were in place at all times during the class period—that it was falsely advertising the products at issue here as having HEPA filters.

48.     Throughout the class period, Defendant made repeated express representations on the products' packaging and in their marketing (including in-store, on Amazon, and on other

websites carrying the products) that the products included a HEPA-grade filter. But testing

proves otherwise, meaning that Defendant's advertising was false.

**E.  But for Defendant's HEPA misrepresentations, Plaintiff and the proposed classes would have paid less for their Levoit air purifiers.**

49.    By falsely claiming that its EverestAir, Core 300 line of purifiers, and

replacement filters met the HEPA standard, Defendant was able to overcharge the classes in the

amount of the HEPA-related premium associated with those claims.

50.    Defendant's HEPA claims appeared on the packaging that its Levoit Air Purifiers

came in; appeared on the webpages where the products were sold; and were baked into the titles

of the Levoit Air Purifiers themselves. Accordingly, those claims were seen by most, if not all,

purchasers of the Levoit Air Purifiers and replacement filters.

51.    Defendant's HEPA claims would have misled reasonable consumers. Defendant is

one of the nation's leading air-purifier manufacturers, so consumers would likely believe

Defendant's HEPA claims. Plus, consumers don't typically test the accuracy of a HEPA claim

before purchasing an air purifier, and Defendant's HEPA claims were expressly false, not

impliedly false (Defendant explicitly claimed that Defendant's air purifiers and filters meet the

HEPA standard, when in fact they do not), i.e., no reasonable consumer would interpret

Defendant's claims as making some kind of implicitly true statement.

52.    If Defendant hadn't claimed that its purifiers and filters met the HEPA standard,

then the market price of those purifiers and filters would have been lower, i.e., those market

prices would have been less than they were in the actual world, and closer to the price of non-

HEPA filters.

53.    Plaintiff purchased a Levoit Core 300 True HEPA Air Purifier on or around

October 7, 2023, and paid $99.99 ($106.24 with tax).

54.     Accordingly, Plaintiff and the proposed classes paid for Defendant's Levoit Air Purifiers at artificially inflated prices. In other words, Defendant's misrepresentations allowed it to overcharge Plaintiff and the classes, who were damaged in the amount of that overcharge.

## V.  CLASS ALLEGATIONS:

55.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of herself and all other similarly situated consumers. Plaintiff seeks to represent a class (the "Nationwide Class") defined as:

> All natural persons in the United States who purchased a Levoit Core 300, Core 300-RAC, Core 300S, or P350 air purifier; an EverestAir air purifier; or a replacement filter during the applicable statutory period.

56.     Plaintiff also seeks to represent a Massachusetts subclass defined as follows (the "Massachusetts Subclass"):

> All natural persons who purchased in Massachusetts a Levoit Core 300, Core 300-RAC, Core 300S, or P350 air purifier; an EverestAir air purifier; or a replacement filter during the applicable statutory period.

57.     The Nationwide Class and Massachusetts Subclass are collectively referred to as the "classes." Excluded from the classes are governmental entities; Defendant; and Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

58.     Plaintiff reserves the right to modify or expand the definition of the classes to seek recovery on behalf of additional persons as facts are learned in further investigation and discovery.

59.     *Numerosity.* Members of the classes are so numerous that their individual joinder is impracticable. The precise number of class members are unknown to Plaintiff at this time,

but—given Defendant's monthly sales, and the fact that it's the leading air-purifier brand in the country—they likely number in the tens (if not hundreds) of thousands.

60.    ***Commonality and predominance.*** Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. These common legal and factual questions include, but are not limited to:

    a)  whether Defendant's HEPA claims were consumer-directed;

    b)  whether the Levoit Air Purifiers' filters are HEPA-grade;

    c)  whether Defendant's website, online advertisements, product packaging, etc., included false or misleading HEPA representations about the Levoit Air Purifiers;

    d)  whether Defendant's HEPA claims would have misled an objectively reasonable consumer;

    e)  whether HEPA-grade purifiers and filters sell at a premium to non-HEPA-grade filters; and

    f)  whether the market price of Defendant's Levoit Air Purifiers would have been lower but for its HEPA claims.

61.    ***Typicality.*** Plaintiff's claims are typical of the claims of the proposed classes that she seeks to represent. Plaintiff, like all members of the proposed classes, paid more for Defendant's purifiers and filters as a result of Defendant's false and misleading HEPA claims.

62.    Plaintiff is an adequate class representative because her interests don't conflict with the interests of the class members; because she has retained counsel who are competent and experienced in prosecuting class actions; and because she intends to vigorously prosecute this action.

63.    A class action is superior to other available means for the fair and efficient adjudication of the false-advertising claims at issue here. Individual recoveries in this case would be dwarfed by the cost of litigating an individual claim, so there is little to no incentive for class

members to bring individual claims; Plaintiff is unaware of any individual actions currently

proceeding against Defendant; individualized litigation increases the delay and expense to all

parties and multiplies the burden on the judicial system; individualized litigation risks

inconsistent or contradictory judgments; etc. By contrast, the class-action device raises fewer

management difficulties, and it provides the benefits of single adjudication, economies of scale,

and comprehensive supervision by a single court on the issue of Defendant's liability.

## VI. COUNTS:

### COUNT I
### *Violations of the Massachusetts Consumer Protection Act, MASS. GEN. LAWS ANN. ch. 93A*
### (on behalf of the Massachusetts Subclass)

64.     Plaintiff repeats and incorporates the preceding paragraphs 1-63.

65.      The Massachusetts Consumer Protection Act prohibits "[u]nfair methods of

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

MASS. GEN. LAWS ANN. ch. 93A, § 2 (West).

66.     Defendant engaged in unfair or deceptive acts or practices by falsely claiming that

its purifiers and filters met the HEPA standard. Independent studies showed that Defendant's

purifiers and filters did not in fact meet those standards, and Defendant decided to withdraw its

HEPA claims instead of challenging those conclusions.

67.     Defendant's advertisements were likely to mislead a consumer acting reasonably

under the circumstances. Consumers—who typically lack the incentive or ability to scientifically

test an air-purifier's efficiency—would reasonably believe a manufacturer's HEPA claim;

particularly one coming from Defendant, a well-established, industry-leading air-purifier

manufacturer.

68.     Defendant's HEPA claims were material. As noted above, consumers are

interested in purchasing the best possible air purifiers; that interest has spiked in the wake of the Covid pandemic; and the fact that HEPA purifiers and filters sell at a 40% premium (on average) to non-HEPA purifiers and filters is direct evidence of this materiality (i.e., it quantifies that materiality).

69.    The entire (or nearly the entire) subclass viewed Defendant's HEPA claims, which were included on the packaging of the EverestAir purifier, the Core 300 line of purifiers, and the replacement filters for each of these purifiers; which were baked into the names of these products; and which were included on the websites selling these products.

70.    Ms. Menter was injured by Defendant's deceptive HEPA claims. But for those claims, she would not have paid a premium for Defendant's Levoit Core 300, i.e., the price of that product would have been lower absent Defendant's HEPA claims. Put differently, Plaintiff overpaid for the Core 300 in the amount of Defendant's HEPA-related price premium, and Ms. Menter did not receive the benefit of her bargain, i.e., the actual value of the Levoit Core 300 and its filter—absent Defendant's HEPA claims—was lower than the amount that Plaintiff actually paid for the product.

71.    Defendant knowingly made the false HEPA claims at issue here. As a large, sophisticated company, and the market leader in air purifiers, Defendant would have run tests on its purifiers and filters to determine whether they did in fact meet the HEPA standard. And the fact that Defendant didn't produce these tests, in order contest the results of the Dyson challenge, indicates that (1) Defendant's own tests confirmed that the purifiers and filters at issue here do not in fact meet the HEPA standard, or (2) Defendant never ran its own tests, which means that it was knowingly making HEPA claims without any evidence to support those claims.

72.    Plaintiff Menter made a demand for relief, in writing, to Defendant at least 30

days prior to filing this complaint, as required by M.G.L. c. 93A § 9. Plaintiff has not received a written tender of settlement that is reasonable in relation to the injury actually suffered by Plaintiff and the Massachusetts Subclass.

73.     Based on the foregoing, Plaintiff Menter and the other members of the Massachusetts Subclass are entitled to all remedies available pursuant to M.G.L c. 93A, including, but not limited to, monetary, compensatory, double or treble, punitive, and statutory damages; injunctive relief; restitution; disgorgement of all moneys obtained by means of Defendant's unlawful conduct; interest; attorneys' fees; and costs.

## COUNT II
### *Fraud*
**(on behalf of the Nationwide Class or, in the alternative, the Massachusetts Subclass)**

74.     Plaintiff repeats and incorporates the preceding paragraphs 1-63.

75.     Plaintiff asserts this claim on behalf of the Nationwide Class or, in the alternative, the Massachusetts Subclass.

76.     As noted above, Defendant's claims that its Levoit Air purifiers and filters met the HEPA standard were false: independent studies showed that the filters did not in fact meet those standards, and Defendant decided to withdraw its claims instead of challenging those conclusions.

77.     Also as noted above, Defendant knowingly made the false HEPA claims at issue here. A large, sophisticated company, like Defendant, would have run tests on its purifiers and filters to determine whether they met the HEPA standard. And the fact that Defendant didn't produce these tests, in order contest the results of the Dyson challenge, indicates that (1) Defendant's tests confirmed Dyson's tests, or (2) Defendant never ran its own tests, which means that it was knowingly making HEPA claims without any evidence to support those claims.

78.     In light of the preceding paragraph, Defendant made its false HEPA statements with the intent to deceive, i.e., in order to allow itself to charge more for its air purifiers and filters than it otherwise could have.

79.     Plaintiff reasonably relied on Defendant's marketing and labeling. *First*, on or around October 3, 2023, Plaintiff saw Defendant's HEPA claims, which appeared on Target's website, in the title of the Core 300 itself, and on the product's box. *Second*, average consumers—who typically lack the incentive or ability to test an air-purifier's efficiency—would reasonably believe a manufacturer's HEPA claim; particularly one coming from Defendant, a well-established, industry-leading brand.

80.     Defendant's HEPA claims were material. As noted above, consumers—including Plaintiff, who was immunocompromised—are interested in purchasing the best possible air purifiers; that interest has spiked in the wake of the Covid pandemic; and the fact that HEPA purifiers and filters sell at a premium to non-HEPA purifiers and filters is direct evidence of this materiality, i.e., it quantifies that materiality.

81.     Plaintiff and the class members were damaged by Defendant's misrepresentations, i.e., they would not have purchased Defendant's Levoit Air Purifiers—at the prices they were being sold for—had they known that they were not HEPA-grade. In other words, Defendant defrauded Plaintiff and the classes into overpaying for its air purifiers.

82.     Plaintiff seeks all appropriate relief, including monetary, compensatory, and punitive damages; injunctive relief; restitution; disgorgement of all moneys obtained by means of Defendant's unlawful conduct; interest; attorneys' fees; and costs.

**COUNT III**
*Negligent Misrepresentation*
**(on behalf of the Nationwide Class or, in the alternative, the Massachusetts Subclass)**

83.    Plaintiff repeats and incorporates the preceding paragraphs 1-63.

84.    Plaintiff asserts this claim on behalf of the Nationwide Class. In the alternative, Plaintiff brings this claim on behalf of the Massachusetts Subclass.

85.    As noted above, Defendant supplied false information to Plaintiff, including Target's website, Defendant's packaging, and the title of the Core 300 itself claimed that Defendant's Levoit Core 300 True HEPA Air Purifier was HEPA-grade, when in fact it was not.

86.    In making those HEPA claims, Defendant failed to exercise reasonable care. As noted above, Defendant either tested its purifiers before marketing them, and therefore knew that they were not HEPA-grade, or Defendant failed to do those tests at all, in which case it negligently misrepresented that its purifiers were HEPA-grade.

87.    Plaintiff and the class members justifiably relied on Defendant's HEPA misrepresentations. Again, a reasonable consumer would believe Defendant's HEPA claims, especially given Defendant's status as a leader in the air-purifier market.

88.    Plaintiff and the classes lost money as a result of Defendant's negligent HEPA misrepresentations. But for those misrepresentations, Plaintiff and the classes would not have purchased Defendant's purifiers at the prices they actually paid for them. In other words, Plaintiff and the classes were misled into purchasing products that were less valuable than advertised.

89.    Plaintiff seeks all appropriate relief, including monetary, compensatory, and punitive damages; injunctive relief; restitution; disgorgement of all moneys obtained by means of Defendant's unlawful conduct; interest; attorneys' fees; and costs.

**COUNT IV**
***Unjust Enrichment***
**(on behalf of the Nationwide Class or, in the alternative, the Massachusetts Subclass)**

90.     Plaintiff repeats and incorporates the preceding paragraphs 1-63.

91.     Plaintiff asserts this claim on behalf of the Nationwide Class. In the alternative, Plaintiff asserts this claim on behalf of the Massachusetts Subclass.

92.     Plaintiff conferred a benefit on Defendant in the form of payments for its Levoit Core 300, or a benefit in the amount of the HEPA-related premium that Defendant charged for its air purifiers and filters.

93.     Defendant—as the seller of Plaintiff's Levoit Core 300—was aware that Plaintiff had conferred a benefit upon it.

94.     It would be unjust to allow Defendant to retain that benefit under the circumstances of this case. Again, but for Defendant's HEPA misrepresentations, Plaintiff would not have paid—or would not have had to pay—Defendant's HEPA-related premium. Accordingly, equity requires that Defendant return those premiums to Plaintiff and the classes.

**COUNT V**
***Breach of Express Warranty***
**(on behalf of the Nationwide Class or, in the alternative, the Massachusetts Subclass)**

95.     Plaintiff repeats and incorporates the preceding paragraphs 1-63.

96.     Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class or, in the alternative, the Massachusetts Subclass.

97.     As alleged in detail above, Defendant promised specific HEPA-related results from its air purifiers and filters, e.g., that they were "HEPA," "H13," or "True HEPA."

98.     However, the products at issue in this case are not in fact HEPA grade.

99.     There are no repairs that Defendant can make to the products at issue in this case in order to make them HEPA grade. Instead of recalling these products, to fix them, Defendant withdrew its HEPA claims from the market and has so far refused to implement any remedial efforts.

100.    Defendant was put on notice of its warranty breach, either by the Dyson action (and Defendant's subsequent decision to cease making HEPA claims) or Plaintiff's pre-suit letter (*see* ¶ 72, *supra*).

101.    Plaintiff and the classes seek all appropriate relief for an express-warranty breach, including a return of the HEPA-related premium that Defendant charged for its products; incidental damages; repair costs; etc.

## VII.    PRAYER FOR RELIEF:

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the proposed classes the following relief against Defendant:

a) for an order certifying the Nationwide Class and Massachusetts Subclass and naming Plaintiff's attorneys as class counsel;

b) for compensatory and punitive damages in amounts to be determined by the Court or a jury;

c) for prejudgment interest on all amounts awarded;

d) for an order of restitution and all other forms of equitable monetary relief;

e) for an order requiring Defendant to undertake a corrective advertising campaign;

f) for an order awarding Plaintiff and the classes their reasonable attorneys' fees and expenses; and

g) granting such other and further relief as may be just and proper.

## VIII.    JURY TRIAL DEMANDED:

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 5, 2024

Respectfully submitted,

*/s/  Edward L. Manchur*

Edward L. Manchur (BBO #316910)
**LAW OFFICES OF EDWARD L.
MANCHUR, P.C.**
P.O. Box 3156
Peabody, MA 01960
Tel.: (978) 333-1013
Email: manchurlaw@gmail.com

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street NE
Washington, DC 20002
Tel: (202) 470-3520
Email: nmigliaccio@classlawdc.com
         jrathod@classlawdc.com

Kevin S. Landau
Archana Tamoshunas
Miles Greaves
**TAUS, CEBULASH & LANDAU, LLP**
123 William Street, Suite 1900A
New York, NY 10038
Tel: (212) 931-0704
Email: klandau@tcllaw.com
         atamoshunas@tcllaw.com
         mgreaves@tcllaw.com

L. Timothy Fisher
Luke Sironski-White
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Tel: (925) 300-4455
Fax: (925) 407-2700
Email: ltfisher@bursor.com
         lsironski@bursor.com

Greg Sinderbrand
**SINDERBRAND LAW GROUP, P.C.**
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361

29

Tel.: (818) 370-3912
Email: greg@sinderbrandlaw.com

Lori G. Feldman
Janine L. Pollack
**GEORGE FELDMAN MCDONALD, PLLC**
745 Fifth Avenue, Suite 500
New York, NY 10151
Tel: (917) 983-2707
Fax: (888) 421-4173
Email: lfeldman@4-justice.com
        jpollack@4-justice.com
        Eservice@4-justice.com

David J. George
Brittany Sackrin
**GEORGE   FELDMAN   MCDONALD, PLLC**
9897 Lake Worth Road, Suite 302
Lake Worth, Florida  33467
Tel.: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-justice.com
        BSackrin@4-justice.com
        EService@4-justice.com


*Attorneys for Plaintiff*